Nos. 17-2433, 17-2445 (cons.)

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

VILLAGE OF OLD MILL CREEK, *et al.*,
    *Plaintiffs-Appellants*,

v.

ANTHONY STAR, in his official capacity as
  Director of the Illinois Power Agency,
    *Defendant-Appellee*,

and

EXELON GENERATION COMPANY, LLC,
    *Intervening Defendant-Appellee.*

---

ELECTRIC POWER SUPPLY ASSOCIATION, *et al.*,
    *Plaintiffs-Appellants*,

v.

ANTHONY STAR, in his official capacity as
  Director of the Illinois Power Agency, *et al.*,
    *Defendants-Appellees*,

and

EXELON GENERATION COMPANY, LLC,
    *Intervening Defendant-Appellee.*

---

On Appeals from the United States District Court for the Northern District of Illinois, Nos. 1:17-cv-01163 & 1:17-cv-01164, Hon. Manish S. Shah, District Judge

**BRIEF OF *AMICUS CURIAE* ENVIRONMENTAL LAW & POLICY CENTER**

Howard A. Learner
Robert Kelter
Bradley Klein
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
(312) 673-6500
HLearner@elpc.org
*Attorneys for Amicus Curiae*
  *Environmental Law & Policy Center*

November 3, 2017

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 17-2433 & 17-2445

Short Caption: Village of Old Mill Creek v. Star

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Environmental Law & Policy Center

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Environmental Law & Policy Center

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature: s/ Howard A. Learner    Date: 11/3/2017
Attorney's Printed Name: Howard A. Learner

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes  X   No ____

Address: 35 East Wacker Drive, Suite 1600
Chicago, IL 60601

Phone Number: 312-673-6500    Fax Number: 312-795-3730

E-Mail Address: HLearner@elpc.org

rev. 01/15 GA

**TABLE OF CONTENTS**

Page

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.     THE ILLINOIS RPS IS CONSTITUTIONAL . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    THE ILLINOIS RPS IS SEVERABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Federal Cases**

*Allco Fin. Ltd. v. Klee,* 861 F.3d 82 (2d Cir. 2017) .................................................. 3, 6, 7

*Allco Fin. Ltd. v. Klee,* 2016 U.S. Dist. LEXIS 10978 (D. Conn. Aug. 18, 2016) ......... 7

*Burlington N. & Santa Fe Ry. Co. v. Doyle*, 186 F.3d 790 (7th Cir. 1999) .................. 9

*Energy & Env't Legal Inst. v. Epel,* 793 F.3d 1169 (10th Cir. 2015) ........................... 3

*Gen. Motors Corp. v. Tracy*, 519 U.S. 278 (1997) ..................................................... 6, 7

*Hughes v. Talen Energy Mktg., LLC*, 136 S. Ct. 1288 (2016) ................................... 2, 4

*Illinois Commerce Commission v. FERC*, 721 F.3d 764 (7th Cir. 2013) ................ 1, 4

*McBurney v. Young*, 133 S. Ct. 1709 (2013) ............................................................... 7

*Prof'l Towing & Recovery Operators of Illinois v. Box*, 965 F. Supp. 2d 981 (N.D. Ill. 2013) ........................................................................................................................ 9

*Wheelabrator Lisbon, Inc. v. Conn. Dep't of Pub. Util. Control*, 531 F.3d 183 (2d Cir. 2008) ........................................................................................................................ 7

**State Cases**

*People v. Sanders*, 182 Ill. 2d 524 (Ill. 1998) .................................................... 8, 9, 10

**Administrative Cases**

Final Order, Docket No. 17-0333 (Il. Commerce Comm'n, Sept. 11, 2017) ............... 10

Order Denying Applications for Rehearing of Decision, Decision 13-10-074, Order Instituting Rulemaking to Continue Implementation and Administration of California Renewables Portfolio Standard Program, Rulemaking 11-05-005 (Cal. Pub. Util. Comm'n Oct. 31, 2013) ....................................................................... 3, 4

Order Granting in Part and Denying in Part a Petition for Rehearing, Proceeding on Motion of the Commission Regarding a Retail Renewable Portfolio Standard, Case 03-E-0188 (N.Y. Pub. Serv. Comm'n Dec. 23, 2013) ............................................. 4

**State Statutes and Rules**

5 Ill. Comp. Stat. § 70/1.31 ....................................................................................... 3

20 Ill. Comp. Stat. § 3855/1-5(6)............................................................................... 5

20 Ill. Comp. Stat. § 3855/1-75 ..................................................................... 2, 5, 9, 10

**Legislation**

S.B. 2814, Public Act 099-0906, 99th General Assembly (Ill. 2016).................... 3, 8, 9

**Other Authorities**

Harvard Environmental Policy Initiative, *State Power Project: Examining State Authority in Interstate Electricity Markets* (Sept. 27, 2017), https://statepowerproject.org/states/......................................................................... 3

ILL. POWER AGENCY, Renewable Resources Procurement, https://www.illinois.gov/sites/ipa/Pages/Renewable_Resources.aspx (accessed Nov. 3, 2017)................................................................................................................... 10

ILL. POWER AGENCY, 2017 Draft Long-Term Renewable Resources Procurement Plan, Sec. 2.2.6. *Items Not Included in Long-Term Renewable Resource Procurement Plan*, https://www.illinois.gov/sites/ipa/Documents/2018ProcurementPlan/IPA-Long-Term-Renewable-Resources-Procurement-Plan-for-public-comment.pdf (accessed Sep 29, 2017)) ............................................................................................................ 10

This appeal is principally focused on the legality of the Zero-Emission Credit ("ZEC") provisions in the Illinois Future Energy Jobs Act ("FEJA") that benefit qualifying nuclear power plants. FEJA also includes the separate and severable Illinois Renewable Portfolio Standard ("RPS") provisions involving Renewable Energy Credits ("RECs") for solar energy and wind power projects. The Environmental Law & Policy Center ("ELPC") respectfully submits this brief to explain why the RPS and its REC provisions are separate and distinct from the ZEC provisions, and to avoid any unintended spillover harms to Illinois' renewable energy development that could result from the Court's ruling on the legality of the ZEC provisions.

Plaintiffs-Appellants have not specifically challenged the RPS and the RECs. Indeed, Plaintiffs-Appellants suggest that programs like the Illinois RPS and its RECs are "the polar opposite" of the nuclear ZEC provisions that they have challenged here. EPSA Br. at 54. Nevertheless, the preemption and dormant Commerce Clause issues addressed in the District Court's decision could be misapplied in ways that would impede successful implementation of the Illinois RPS and its REC provisions. For example, Plaintiffs' briefs before the District Court cite *dicta* from a Seventh Circuit case for the proposition that states cannot adopt policies that support local renewable energy generation without providing "equal credit" for out-of-state RECs. *See* Pls.' Mem. in Supp. of Mot. for Prelim. Inj. at 20. In *dicta*, Judge Posner's opinion in *Illinois Commerce Commission v. FERC*, 721 F.3d 764, 776 (7th Cir. 2013), questions the constitutionality of Michigan's RPS

1

even though that out-of-circuit state statute was not at issue in the case then before the Seventh Circuit.

This Court should address only the ZEC provisions at issue in this case and should avoid threatening long-standing state authority to enact RPS laws to protect public health, safety, and the environment. Moreover, if the Court does rule in favor of the Plaintiffs-Appellants and strikes down the nuclear ZEC provisions, then it should also clearly state that the Illinois RPS and the REC provisions remain severable and valid. This would acknowledge FEJA's explicit severability clause and the Supreme Court's respect for state measures to "encourage development of new or clean generation . . .." *See Hughes v. Talen Energy Mktg., LLC*, 136 S. Ct. 1288, 1299 (2016).

I. **The Illinois RPS is Constitutional.**

Illinois enacted a statutory Renewable Portfolio Standard in 2007 to accelerate new clean wind power and solar energy development to help protect public health by reducing emissions that affect the state's air and water, and to diversify the state's electricity supply. The RPS requires the Illinois Power Agency to procure RECs from wind, solar and other renewable energy projects to eventually provide 25% of the energy delivered by utilities to consumers by 2025. 20 ILCS 3855/1-75(c).

In 2016, Illinois enacted the comprehensive FEJA energy legislation that, in part, improved and modernized the Illinois RPS while also amending the Illinois

Power Agency Act to add a new nuclear "Zero Emissions Standard."[1] FEJA contains an explicit severability clause making clear the legislature's intent that each of the separate parts of the statutory package should stand or fall on their own, without affecting the remaining components.[2]

Twenty-nine states plus Washington D.C. and three territories have RPS laws. Although there have been periodic legal challenges, no federal court has struck down a state renewable energy law as unconstitutional.[3] To the contrary, courts and agencies have recently upheld RPS laws in several states. *See Allco Fin. Ltd. v. Klee,* 861 F.3d 82 (2d Cir. 2017) (upholding dismissal of dormant Commerce Clause challenge to Connecticut RPS); *Energy & Env't Legal Inst. v. Epel,* 793 F.3d 1169 (10th Cir. 2015) (upholding dismissal of dormant Commerce Clause challenge to Colorado RPS); Order Denying Applications for Rehearing of Decision, Decision 13-10-074, Order Instituting Rulemaking to Continue Implementation and Administration of California Renewables Portfolio Standard Program, Rulemaking

---

[1] *See* SB 2814, Public Act 099-0906, 99th General Assembly (Ill. 2016), available at http://www.ilga.gov/legislation/99/SB/PDF/09900SB2814enr.pdf (hereinafter "Public Act 99-09066").

[2] Section 97 of Public Act 99-0906 states that "[t]he provisions of this Act are severable under Section 1.31 of the Statute on Statutes." Section 1.31 of the Illinois Statute on Statutes states:

> **Sec. 1.31.** If any provision of an Act enacted after the effective date of this amendatory Act or application thereof to any person or circumstance is held invalid, such invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid application or provision, and to this end the provisions of each Act enacted after the effective date of this amendatory Act are severable, unless otherwise provided by the Act.

5 ILCS 70/1.31.

[3] Harvard Environmental Policy Initiative, *State Power Project: Examining State Authority in Interstate Electricity Markets* (Sept. 27, 2017), https://statepowerproject.org/states/.

3

11-05-005 (Cal. Pub. Util. Comm'n Oct. 31, 2013) (rejecting constitutional challenge to California RPS); Order Granting in Part and Denying in Part a Petition for Rehearing, Proceeding on Motion of the Commission Regarding a Retail Renewable Portfolio Standard, Case 03-E-0188 (N.Y. Pub. Serv. Comm'n Dec. 23, 2013) (upholding New York RPS). The United States Supreme Court recognized that states may employ various approaches to encourage development of clean generation, so long as they are not "tethered" to a generator's involvement in the wholesale market. *Hughes*, 136 S. Ct. at 1299. No party has argued here that the Illinois RPS is "tethered" to wholesale market participation.

The only recent decision with language questioning the legality of a state RPS comes in the form of *dicta* – extraneous to the main holding – in *Illinois Commerce Commission*, 721 F.3d at 764. The issue in *Illinois Commerce Commission* was whether the Federal Energy Regulatory Commission ("FERC") complied with the Federal Power Act when it approved a regional plan to build and share the costs of new electric transmission lines across the Midwest. Michigan opposed the plan, contending that it requires Michigan utilities and consumers to pay more than their fair share. In dispensing with one of Michigan's arguments, Judge Posner inserted short *dicta* opining that Michigan's RPS "trips over an insurmountable constitutional objection. Michigan cannot, without violating the commerce clause of Article 1 of the Constitution, discriminate against out-of-state renewable energy." *Id.* at 776. This *dicta* was not necessary for the Court's holding, was not fully briefed by the parties, and should have no binding legal consequences.

4

Many valid state RPS statutes, including Illinois', limit eligibility to RECs generated within a specific region to ensure that the laws achieve their intended public health and safety goals, but that does not mean that states are "discriminating against out-of-state renewable energy" in violation of the Commerce Clause. Illinois enacted its RPS to "diversify Illinois electricity supply, avoid and reduce pollution, reduce peak demand, and enhance public health and well-being of Illinois residents." 20 ILCS 3855/1-5(6). In order to achieve these legitimate state goals, the Illinois RPS creates geographic requirements based on "public interest criteria" to "maximize the State's interest in the health, safety, and welfare of its residents." 20 ILCS 3855/1-75(c)(1)(I). These legitimate local purposes include, but are not limited to, "minimizing sulfur dioxide, nitrogen oxide, particulate matter and other pollution that adversely affects public health in this State, increasing fuel and resource diversity in this State, enhancing the reliability and resiliency of the electricity distribution system in this State, meeting goals to limit carbon dioxide emissions under federal or State law, and contributing to a cleaner and healthier environment for the citizens of this State." 20 ILCS 3855/1-75(c)(1)(I).

The state could not fully achieve these legitimate goals without limiting the geography within which renewable energy is generated. Wind power projects in California do not enhance the diversity and resiliency of the grid serving Illinois customers. Solar panels in Florida do not reduce pollution exacerbating childhood asthma in Illinois.

5

The Second Circuit recently upheld the Connecticut RPS law, which is similar to the Illinois RPS. "'We have consistently recognized the legitimate state pursuit of such interests as compatible with the Commerce Clause, which was 'never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens,' even if that 'legislation might indirectly affect the commerce of the country.'" *Allco*, 861 F.3d at 108 (quoting *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 306–07 (1997)).

In *Allco*, the owner of a solar power facility in Georgia claimed discriminatory "regional protectionism" in violation of the dormant Commerce Clause because its RECs were not eligible to meet the Connecticut RPS requirements. Connecticut defended the geographic limitations on RECs, arguing that increased *in-region* renewable energy development is necessary for Connecticut to achieve the legitimate public health, welfare, and safety goals of its program. For example, Connecticut argued that local renewable energy production "would improve air quality for its citizens and protect them from price and supply shocks that could result if, for example, there was a natural gas shortage or a nuclear power plant were to go off-line." *Allco*, 861 F.3d at 93. The state contended that it should not be required to subsidize solar projects in Georgia because those facilities do not help Connecticut accomplish its valid health, safety, and environmental goals. *Id.* The district court and the Second Circuit agreed, dismissing the plaintiff's Commerce Clause challenges to the geographic requirements in the law. "Connecticut's RPS program serves its legitimate interest in promoting increased production of

6

renewable power generation in the region, thereby protecting its citizens' health, safety, and reliable access to power." *Allco*, 861 F.3d at 106.

The Second Circuit also observed that state RPS laws differ significantly from laws involving traditional goods that trade in a national marketplace. "Conceptually, of course, any notion of discrimination assumes a comparison of substantially similar entities." *Tracy*, 519 U.S. at 298–99. But RECs are not traditional articles of commerce like milk, minnows, fruit, and shrimp. Instead, RECs are "inventions of state property law," *Wheelabrator Lisbon, Inc. v. Conn. Dep't of Pub. Util. Control*, 531 F.3d 183, 186 (2d Cir. 2008), and every state RPS creates a distinct market with "different products." *Allco,* 861 F.3d at 105. As the district court in the *Allco* case explained:

> Whereas a shrimp in Louisiana is the same creature as a shrimp in Wyoming (with identical physical and emotional strengths and weaknesses, hopes and fears), an REC in Connecticut is not necessarily an REC in Colorado; instead, the market exists only within Connecticut.

*Allco Fin. Ltd. v. Klee*, 2016 U.S. Dist. LEXIS 109786 at *74 (D. Conn. Aug. 18, 2016).

Having created a new market for RECs, states are not somehow obligated to spread the benefits beyond the consumers who ultimately pay for the REC subsidies through their rates. *Allco*, 2016 U.S. Dist. LEXIS 109786 at *76; *see McBurney v. Young*, 133 S. Ct. 1709, 1712–13 (2013) ("A State does not violate the dormant Commerce Clause when, having created a market through a state program, it 'limits benefits generated by [that] state program to those who fund the state

7

treasury and whom the State was created to serve."') (quoting *Reeves, Inc. v. Stake*, 100 S. Ct. 2271, 2280 (1980)).

Plaintiffs-Appellants have not challenged the Illinois RPS, which is clearly constitutional. Indeed, they concede that "Illinois retains ample authority to promote power generation and to protect the health and welfare of its citizens" through means that are "not tethered" to wholesale markets. EPSA Br. at 51. If the Court reverses the District Court's order in this case, it should be careful to clarify that its analysis and resolution of the constitutional issues in this case apply to the ZEC provisions only and have no bearing on the constitutionality of the Illinois RPS.

## II. The Illinois RPS is Severable.

If the Court were to rule in favor of Plaintiffs-Appellants and strike down the nuclear ZEC provisions of the Act, it should also find that the Illinois RPS is severable and, therefore, remains in effect. The severability clause in FEJA, which established the ZEC provisions and, also, amended and modernized the existing RPS and the RECs provisions, confirms the black letter principle of Illinois law that separate provisions of the same Act should be construed as severable, as long as they can be given independent effect. Public Act 99-0906, Sec. 97. "Mindful of our obligation to uphold legislative enactments whenever reasonably possible we may excise the offending portion from the Act and preserve the remainder, provided the remainder is complete in and of itself, and is capable of being executed wholly independently of the severed portion." *People v. Sanders*, 182 Ill. 2d 524, 534 (Ill.

8

1998). This standard for severability should be applied by the Seventh Circuit in this case. *See Burlington N. & Santa Fe Ry. Co. v. Doyle*, 186 F.3d 790, 804 (7th Cir. 1999) (Seventh Circuit applies state severability law); *Prof'l Towing & Recovery Operators of Illinois v. Box*, 965 F. Supp. 2d 981, 1007 (N.D. Ill. 2013) (applying Illinois severability law in a federal preemption case).

The Illinois RPS clearly passes the Illinois test for severability. The RPS is "complete in and of itself" and can be implemented independently if the Court strikes down the nuclear ZEC provisions. *See Sanders*, 182 Ill. 2d at 534. The best evidence that the RPS is "capable of being executed wholly independently" is that the Illinois Power Agency ("IPA") has, in fact, been independently implementing the Illinois RPS for ten years. By contrast, the nuclear energy ZEC provisions were newly created in 2016. *See* Public Act 99-0906, enacting 20 ILCS 3855/1-75(d-5) Nuclear ZECs are new to Illinois, and the nuclear ZEC concept itself is largely new to the nation.

The IPA and Illinois Commerce Commission ("ICC") implement the nuclear ZEC and renewable REC provisions through entirely separate regulatory processes that are executed independently.[4] The ICC approved the IPA's first nuclear ZEC Procurement Plan on September 11, 2017, and the IPA is now moving ahead to

---

[4] *Compare* the "Zero Emission Standard Procurement Plan" prepared pursuant to Section 1-75(d-5) of the Illinois Power Agency Act (20 ILCS 3855/1-75(d-5)) *with* the "Long-Term Renewable Resources Procurement Plan" prepared pursuant to Section 1-75(c) of the Illinois Power Agency Act and Section 16-111.5 of the Public Utilities Act (220 ILCS 5/16-111.5(b)(5)).

qualify bidders.[5] The IPA is still developing its renewable resources procurement plan, and the ICC is not expected to approve it until April 2018.[6] The IPA's Draft 2017 Long-Term Renewable Resource Procurement Plan explicitly states that nuclear ZECs "do not fall within the scope and jurisdiction of what the IPA may propose and the Commission may approve as part of this Plan."[7]

## III. Conclusion

In conclusion, the Illinois RPS stands on its own and is not at issue in this case. Moreover, many courts have reviewed the legality of similar renewable energy standards and upheld them. While *dicta* in the *Illinois Commerce Commission* decision questions the legality of Michigan's RPS, this Court should not apply that *dicta* or find it persuasive here. ELPC urges the Court to focus its decision on the legality of the nuclear ZEC provisions. If this Court does strikes down nuclear ZECs, it should find that the remainder of FEJA, especially the RPS and its RECs provisions are severable. This Court should be mindful of the obligation under Illinois law "to uphold legislative enactments wherever reasonably possible." *Sanders*, 182 Ill. 2d at 534.

---

[5] *See* Final Order, Docket No. 17-0333 (Il. Commerce Comm'n, Sept. 11, 2017); *see generally* 20 ILCS 3855/1-75(d-5). The IPA's ZEC Procurement website is available at https://www.ipa-energyrfp.com/zero-emission-credits/.

[6] *See generally* ILL. POWER AGENCY, Renewable Resources Procurement, https://www.illinois.gov/sites/ipa/Pages/Renewable_Resources.aspx (accessed Nov. 3, 2017).

[7] ILL. POWER AGENCY, 2017 Draft Long-Term Renewable Resources Procurement Plan, Sec. 2.2.6. *Items Not Included in Long-Term Renewable Resource Procurement Plan* 18–19, https://www.illinois.gov/sites/ipa/Documents/2018ProcurementPlan/IPA-Long-Term-Renewable-Resources-Procurement-Plan-for-public-comment.pdf (accessed Sep 29, 2017).

Dated: November 3, 2017                    Respectfully Submitted,


                                              /s/ Howard A. Learner

                                              Howard A. Learner
                                              Robert Kelter
                                              Bradley Klein

                                              Environmental Law & Policy Center
                                              35 East Wacker Drive, Suite 1600
                                              Chicago, Illinois 60601
                                              (312) 673-6500
                                              HLearner@elpc.org
                                              *Attorneys for the*
                                              *Environmental Law & Policy Center*

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), as modified by Circuit Rule 32(c), because, excluding parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,651 words, as determined by Microsoft Word 2010.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(f) and the type-style requirements of Fed. R. App. P. 32(a)(6), as modified by Circuit Rule 32, because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 12-point (and 11-point in the footnotes) Century Schoolbook font.

Dated: November 3, 2017                 /s/ Howard A. Learner
                                        Howard A. Learner

# CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2017, I electronically filed the foregoing Brief of *Amicus Curiae* Environmental Law & Policy Center with the Clerk of the Court of the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 3, 2017                /s/ Howard A. Learner
                                       Howard A. Learner